1  RONALD J. TENPAS
     Assistant Attorney General
2    Environment and Natural Resources Division
     United States Department of Justice
3  DAVID B. GLAZER (D.C. 400966; MD)
     Natural Resources Section
4    Environment and Natural Resources Division
     United States Department of Justice
5    301 Howard Street, Suite 1050
     San Francisco, California  94105
6    Telephone:    (415) 744-6491
     Facsimile:    (415) 744-6476
7    E-mail:  david.glazer@usdoj.gov

8  Attorneys for the Federal Defendants

9

10

11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16  _____

17  SIERRA CLUB, WILDEARTH              )    No. C-08-0850 VRW
     GUARDIANS, and ROCKY MOUNTAIN      )
18  CLEAN AIR ACTION,                   )
                                        )
19          Plaintiffs,                 )    DEFENDANTS' NOTICE OF MOTION
                                        )    AND MOTION FOR JUDGMENT ON
20      v.                              )    THE PLEADINGS
                                        )
21  U.S. DEPARTMENT OF THE INTERIOR     )    Date:    August 28, 2008
     and DIRK KEMPTHORNE,               )    Time:  2:30 p.m.
22                                      )    Courtroom No. 6
            Defendants                  )
23  _____    )    Hon. Vaughn R Walker

24

25

26

27

28

*Sierra Club, et al. v. U.S. Dep't of the Interior, et al.*, No. C-08-0850 VRW
Defendants' Notice of Motion and Motion for Judgment on the Pleadings

1

<u>TABLE OF CONTENTS</u>

2

3    NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5        I.      Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6        II.     Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7        III.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8              A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9              B.     Plaintiffs' Claim of "Informational" Standing is an
                    Insufficient Basis for this Court's Jurisdiction . . . . . . . . . . . . . . . . . . . . 5
10

11             C.     Plaintiffs Fail to Satisfy the Causation and Redressability
                    Requirements of Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

**Federal Cases**

3    Center for Biological Diversity v. Brennan, 2007 U.S. Dist. LEXIS 65456,
        2007 WL 2408901 (N.D. Cal. Aug. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4

5    Bauer v. Texas, 341 F.3d 352 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6    Beeman v. TDI Managed Care Servs., Inc., 449 F.3d 1035 (9th Cir. 2006) . . . . . . . . . . . . . . . . 9

7    Cetacean Cmty. v. Bush, 386 F.3d 1169 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

8    Citizens for Better Forestry v. U.S. Dep't of Agric., 341 F.3d 961 (9th Cir. 2003) . . . . . . . . . 7-9

9    DBSI/TRI IV Ltd. P'ship v. United States, 465 F.3d 1031 (9th Cir. 2006) . . . . . . . . . . . . . . . . . 1

10   Federal Election Commission v. Akins, 524 U.S. 11 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

11   Foundation on Economic Trends v. Lyng, 943 F.2d 79 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . 7

12   Fund for Animals v. Norton, 295 F. Supp. 2d 1 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . 9, 13

13   Guerrero v. Clinton, 157 F.3d 1190 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

14   Hartman v. Summers, 120 F.3d 157 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15   Longshoremen's Union v. Boyd, 347 U.S. 222 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16   Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10-12

17   Lujan v. National Wildlife Federation, 497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18   Merchants Home Delivery Serv. v. Frank B. Hall & Co., 50 F.3d 1486 (9th Cir. 1995) . . . . . . . . 4

19   Provenzano v. United States, 123 F. Supp. 2d 554 (S.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . 4

20   Rivas v. Rail Delivery Serv., 423 F.3d 1079 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

21   Sierra Club v. Morton, 405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22   Smith v. National Steel & Shipbuilding Co., 125 F.3d 751 (9th Cir. 1997) . . . . . . . . . . . . . . . . . 4

23   Steel Co. v. Citizens for a Better Env't., 523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

24   Thornhill Pub. Co. v. General Tel. & Electronics Corp., 594 F.2d 730 (9th Cir. 1979) . . . . . . . . 4

25   United States v. Hays, 515 U.S. 737 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26   Valley Forge Christian College v. Americans United for Separation
        of Church and State, Inc., 454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27   Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 4

28

Wilderness Soc'y v. Norton, 434 F.3d 584 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

**Federal Statutes**

U.S. Const. Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pub. L. No. 109-58, 119 Stat. 594 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4

5 U.S.C. §§ 701–706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16 U.S.C. § 1539(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 2201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 2201–2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §§ 4321–4370f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Rules**

Fed. R. Civ. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

Fed. R. Civ. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

Fed. R. Civ. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1

NOTICE OF MOTION

2    Defendants United States Department of the Interior and Dirk Kempthorne hereby serve

3 notice that they will bring on for hearing a motion for judgment on the pleadings, pursuant to

4 Fed. R. Civ. P. 12(b)(1) & (c).  The motion is currently calendared to be heard by the Hon.

5 Vaughn R Walker on August 28, 2008, at 2:30 p.m., in Courtroom No. 6.

6    The motion asks that judgment be entered for the defendants on plaintiffs' complaint

7 because the plaintiffs lack standing to pursue their claims.  In support of their motion, the

8 defendants respectfully direct the Court's attention to the memorandum of points and authorities,

9 below.  A proposed order is also submitted herewith.

10

POINTS AND AUTHORITIES

11 I.    Statement of Issues

12    Plaintiffs are the Sierra Club, WildEarth Guardians, and Rocky Mountain Clean Air

13 Action.  Their complaint [Dkt. #1] seeks review under the Administrative Procedure Act

14 ("APA"), 5 U.S.C. §§ 701–706,[1] and includes only one claim for relief, based upon the alleged

15 failure of the defendants to enter into an agreement with the National Academy of Sciences to

16 conduct a study required by the Energy Policy Act of 2005 ("2005 Act"), Pub. L. No. 109-58,

17 § 1811, 119 Stat. 594, 1126–27 (2005), concerning coal bed methane ("CBM") extraction, to

18 make the completed study available to the public, and to submit a subsequent report to Congress.

19    Plaintiffs describe themselves as environmental organizations dedicated to preserving

20 wildlife and public lands and to addressing what they perceive as environmental degradation.

21 (Complaint ¶¶ 7–13.)  They all claim active involvement in the CBM issue.  (*Id*. ¶¶ 9, 11, 13.)

22 However, plaintiffs have not alleged that they have or will suffer concrete, particularized injuries

23

─────────────

24 [1]    Plaintiffs also seek declaratory and injunctive relief under the Declaratory Judgment Act,
28 U.S.C. §§ 2201–2202, but those statutory provisions do not change the standing analysis
25 discussed below.  Suits for declaratory judgment may not proceed in the absence of a concrete
"case or controversy."  *Longshoremen's Union v. Boyd*, 347 U.S. 222, 223–24 (1954).  The
26 "actual controversy" requirement of 28 U.S.C. § 2201(a) is identical to the "case or controversy"
requirement of U.S. Const. Article III.  *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *see
27 also DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1039 (9th Cir. 2006) (court will
not grant declaratory or injunctive relief where standing and ripeness under APA not found).

28

1    that are likely to be redressed by the relief sought; therefore, they lack standing to pursue their

2    claims under Article III of the U.S. Constitution.

3    II.    Statement of Facts

4            The 2005 Act is a wide-ranging statute requiring that many federal agencies with

5    responsibility over energy matters undertake a variety of programs, regulatory activities, and

6    studies.  As it relates to plaintiffs' complaint, the 2005 Act provides as follows:

7            SEC. 1811. COAL BED METHANE STUDY.

8            (a)  STUDY.-

9            (1)  IN GENERAL. — The Secretary of the Interior, in consultation with the
             Administrator of the Environmental Protection Agency, shall enter into an
10           arrangement under which the National Academy of Sciences shall conduct a study
             on the effect of coal bed natural gas production on surface and ground water
11           resources, including ground water aquifers, in the States of Montana, Wyoming,
             Colorado, New Mexico, North Dakota, and Utah.

12
             (2)  MATTERS TO BE ADDRESSED. — The study shall address the
13           effectiveness of —

14           (A)  the management of coal bed methane produced water;

15           (B)  the use of best management practices; and

16           (C)  various production techniques for coal bed methane natural gas in
             minimizing impacts on water resources.
17
             (b)  DATA ANALYSIS. — The study shall analyze available hydrologic,
18           geologic and water quality data, along with —

19           (1)  production techniques, produced water management techniques, best
             management practices, and other factors that can mitigate effects of coal bed
20           methane development;

21           (2)  the costs associated with mitigation techniques;

22           (3)  effects on surface or ground water resources, including drinking water,
             associated with surface or subsurface disposal of waters produced during
23           extraction of coal bed methane; and

24           (4)  any other significant effects on surface or ground water resources associated
             with production of coal bed methane.
25
             (c)  RECOMMENDATIONS. — The study shall analyze the effectiveness of
26           current mitigation practices of coal bed methane produced water handling in
             relation to existing Federal and State laws and regulations, and make
27           recommendations as to changes, if any, to Federal law necessary to address
             adverse impacts to surface or ground water resources associated with coal bed
28

1    methane development.

2    (d)  COMPLETION OF STUDY. — The National Academy of Sciences shall
     submit the findings and recommendations of the study to the Secretary of the
3    Interior and the Administrator of the Environmental Protection Agency within 12
     months after the date of enactment of this Act, and shall upon completion make
4    the results of the study available to the public.

5    (e)  REPORT TO CONGRESS. — The Secretary of the Interior and the
     Administrator of the Environmental Protection Agency, after consulting with
6    States, shall report to the Congress within 6 months after receiving the results of
     the study on-
7
     (1)  the findings and recommendations of the study;
8
     (2)  the agreement or disagreement of the Secretary of the Interior and the
9    Administrator of the Environmental Protection Agency with each of its findings
     and recommendations; and
10
     (3)  any recommended changes in funding to address the effects of coal bed
11   methane production on surface and ground water resources.

12   *Id.* § 1811, 119 Stat. at 1126–27.  (*See* Complaint ¶ 23.)

13       Coal bed methane is a form of natural gas found in coal seams.  (Complaint ¶ 19.)  Its

14   extraction requires that ground water in the coal seams be pump out.  (*Id.*)  The study and report

15   to Congress required by the 2005 Act (the "Report") is designed to explore the potential effects

16   on surface and ground water resources from the extraction of coal bed methane and the resulting

17   production and disposal of water from the extraction process.

18       Plaintiffs claim that their members

19   live, work, recreate, and study, and will continue to live, work, recreate and study
     in areas that are adversely affected by coal bed methane production or have been
20   proposed for coal bed methane production or are hydrologically connected to
     areas where coal bed methane production is currently occurring or is proposed to
21   occur.

22   (Complaint ¶ 14.)  They further assert that the defendants'

23   failure to secure a report on the impacts of coal bed methane production on
     surface waters and ground waters . . . deprive[s] Plaintiffs and their members of
24   information guaranteed to the public by the Energy Policy Act of 2005.  Plaintiffs
     and their members are adversely affected by Defendants' failure to make public
25   this legally required information.

26   (*Id.* ¶ 15.)  Finally, plaintiffs claim that

27   [i]f Plaintiffs and their members had this information, they would use it to further
     educate the public about the impacts of coal bed methane exploration and extrac-
28

1
2
3
4

> tion.  They would also use the information to advocate for adoption of measures to further reduce or mitigate the impacts of coal bed methane exploration and extraction.  Defendants' failure to produce this information as required by the Energy Policy Act of 2005 deprives the Plaintiffs and their members of these benefits and thus causes them injury.  Granting the requested relief would redress the injuries described above.

5 (*Id*. ¶ 16.)  Read in the light most favorable to the plaintiffs, the complaint asserts only that the

6 plaintiffs and their membership have been deprived of information that they might use for

7 educational or advocacy purposes.  They nowhere claim that they have suffered any concrete or

8 particularized injuries that might be redressed by actions taken as a result of the Report — or

9 even that the Report would necessarily result in any specific recommendations concerning

10 actions that they might desire to see performed.

11 III.    Argument

12        A.    Standard of Review

13        Rule 12(c) of the Federal Rules of Civil Procedure provides for the expeditious disposi-

14 tion of claims after the close of the pleadings, but before trial.[2/]  "A judgment on the pleadings is

15 properly granted when, taking all the allegations in the pleading as true, the moving party is

16 entitled to judgment as a matter of law."  *Smith v. National Steel & Shipbuilding Co.*, 125 F.3d

17 751, 753 (9th Cir. 1997); *Merchants Home Delivery Serv. v. Frank B. Hall & Co.*, 50 F.3d 1486,

18 1488 (9th Cir. 1995).  Where the motion attacks the Court's subject matter jurisdiction, it will be

19 granted when the allegations of the complaint, accepted as true, reveal that a court lacks subject

20 matter jurisdiction.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003);

21 *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979);

22 *Provenzano v. United States*, 123 F. Supp. 2d 554, 557 (S.D. Cal. 2000).  "A suit brought by a

23 plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal

24 court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*, 386 F.3d

25

26 [2/]    Where the Court considers matters outside the pleadings, the motion should be treated as a motion for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  Defendants at this juncture do not rely on matters outside the pleadings, but reserve their rights to challenge any such material offered by plaintiffs in response to this motion.

27
28

1  1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101

2  (1998)).  Such a case should be dismissed under Fed. R. Civ. P. 12(b)(1).  *Id.*

3        B.    Plaintiffs' Claim of "Informational" Standing is an Insufficient Basis for this
             Court's Jurisdiction

4

5        The requirement that a plaintiff demonstrate its standing to pursue a claim in federal

6  court arises from both the constitutional limitation on federal court jurisdiction to "cases or

7  controversies" under Article III and from prudential considerations informing the proper exercise

8  of federal judicial power.  *See Hartman v. Summers*, 120 F.3d 157, 159 (9th Cir. 1997).  Like

9  subject matter jurisdiction, standing cannot be waived.  *Id.*; *United States v. Hays*, 515 U.S. 737,

10  742 (1995).

11        [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has
         suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or
12        imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the
         challenged action of the defendant; and (3) it is likely, as opposed to merely
13        speculative, that the injury will be redressed by a favorable decision.

14  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)

15  (citation omitted); *Cetacean Cmty*, 386 F.3d at 1174; *see also Rivas v. Rail Delivery Serv.*,

16  423 F.3d 1079, 1083 (9th Cir. 2005) (plaintiff must point to "some threatened or actual injury

17  resulting from the putatively illegal action").  A plaintiff's standing cannot be premised upon

18  merely speculative claims of injury.  *Friends of the Earth, Inc.*, 528 U.S. at 181.

19        Nor can a plaintiff's standing be founded on alleged harm that amounts to no more than a

20  disagreement with how the government is conducting its business of governing.

21        [A] plaintiff raising only a generally available grievance about government —
         claiming only harm to his and every citizen's interest in proper application of the
22        Constitution and laws, and seeking relief that no more directly and tangibly
         benefits him than it does the public at large — does not state an Article III case or
23        controversy.

24  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992).  It does not matter that a plaintiff

25  may claim a special interest in the subject matter of its suit; if the plaintiff alleges only that

26  interest and not a real and particularized harm to its economic, recreational, aesthetic, or other

27  concrete interests, it will lack standing.

28

[A] mere "interest in a problem," no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization "adversely affected" or "aggrieved" within the meaning of the APA.  The Sierra Club is a large and long-established organization, with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations.  But if a "special interest" in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide "special interest" organization, however small or short-lived.  And if any group with a bona fide "special interest" could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so.

*Sierra Club v. Morton*, 405 U.S. 727, 739–40 (1972).

In addition to the constitutional requirements of Article III, courts have developed a set of prudential considerations that limit standing in federal court to prevent a plaintiff "from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499–500 (1975)).  To that end, "the plaintiff's complaint must fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'"  *Valley Forge*, 454 U.S. at 475 (quoting *Ass'n of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).

As noted above, the injury asserted by plaintiffs is purely "informational" and stems from the government's alleged failure to provide them with information (as yet undeveloped) that they might some time in the future, they assert, put to good use in educational or advocacy activities. Such an injury, without more, is insufficient to confer standing.  The Supreme Court has rejected the view that any citizen can sue to enforce government adherence to statutory requirements in the absence of a concrete injury to that person.[3]/  *Defenders of Wildlife*, 504 U.S. at 572–73. And before *Defenders of Wildlife* was handed down, the D.C. Circuit similarly rejected the

---

[3]/     Although plaintiffs claim that their members engage in activities in areas affected or potentially affected by CBM production (Complaint ¶ 14), they do not connect those allegations to the informational injury they allege — an injury that conceivably could be suffered by any member of the public anywhere in the United States.

1    notion of "informational" standing. *Foundation on Economic Trends v. Lyng*, 943 F.2d 79 (D.C.

2    Cir. 1991). In reaching that decision, the court noted the circular nature of an "informational"

3    standing theory: if the "injury" is the lack of information "caused" by the defendant's failure to

4    provide it, then it can be theoretically "redressed" by ordering the agency to provide the informa-

5    tion sought. But in that case, the standing requirement of Article III jurisdiction is all but

6    eliminated in environmental cases, except perhaps for the very "foolish" organization that did

7    not claim that it desired the information in question for any reason relating to the environment.

8    *Lyng*, 943 F.2d at 84–85. Moreover, the court observed, any such injury could be claimed by

9    any member of the public and would arise on a daily basis, whenever a member of the public

10    asserted that the government was failing to provide information that he or she would like to

11    have. *Id.* at 85. That, too, would eviscerate the standing requirement.

12          Significantly, *Lyng* relied on a case handed down the previous year, *Lujan v. National*

13    *Wildlife Federation*, 497 U.S. 871 (1990), in which the Supreme Court held, among other things,

14    that a plaintiff does not have the right to seek review under the APA of an agency's failure to

15    prepare an Environmental Impact Statement pursuant to the National Environmental Policy Act

16    ("NEPA"), 42 U.S.C. §§ 4321–4370f, in the absence of a triggering governmental action apart

17    from "day-to-day" operations. *Lyng*, 943 F.2d at 85–86 (citing *Nat'l Wildlife Fed'n*, 497 U.S. at

18    898–99). In so holding, the *National Wildlife Federation* Court rejected the notion of "informa-

19    tional" injury standing alone. 497 U.S. at 898–99.

20          Indeed, no decision of which defendants are aware has conferred standing on a plaintiff

21    to seek redress for a purely informational injury. In all cases in which "informational" injury

22    was alleged, other factors existed that distinguish those cases from one asserting purely

23    "informational" standing. In *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), the

24    statute sued under contained specific enforcement provisions that could be invoked by a citizen

25    seeking to acquire the information whose production was required by law. *Id.* at 16, 18, 20. In

26    *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961 (9ᵗʰ Cir. 2003), the plaintiffs

27    objected to their inability to participate in an administrative rulemaking process, which resulted

28

1   in the promulgation of regulations that they asserted adversely affected their aesthetic and

2   recreational interests.  *Id*. at 970–72.  Similarly, in *Center for Biological Diversity v. Brennan*,

3   No. 06-cv-7062 SBA, 2007 U.S. Dist. LEXIS 65456, at *9–27, 2007 WL 2408901, at *3–10

4   (N.D. Cal. Aug. 21, 2007), the Court premised its finding of injury-in-fact upon the statutorily

5   guaranteed opportunities for public comment and participation that the plaintiffs alleged they had

6   been improperly denied.

7          *Brennan*, in fact, is quite similar to a case decided recently by this Court, *Cary v. Hall*,

8   No. 06-cv-4363 VRW, 2006 U.S. Dist. LEXIS 78573[4]/ (N.D. Cal. Sep. 30, 2006) (Walker, C.J.),

9   in which the Court reached a decision that is very instructive for this case.  In *Cary*, the plaintiffs

10  challenged a decision by the U.S. Fish and Wildlife Service allowing, among other things, the

11  export or re-import of a species of otherwise protected antelope.  Among other things, the

12  plaintiffs claimed an "informational" injury in being denied certain information and the

13  concomitant opportunity for public participation that would have been afforded if the Agency

14  had complied with the permit process that plaintiffs asserted was required under section 10(c) of

15  the Endangered Species Act ("ESA"), 16 U.S.C. § 1539(c).  In finding that this claim adequately

16  presented an "informational" injury, the Court held that section 10(c) of the ESA afforded a

17  statutory right to public comment and participation sufficient to support standing.  2006 U.S.

18  Dist. LEXIS 78573, at *25–34.  At the same time, however, the Court noted that "information

19  for information's sake" was insufficient to satisfy the "zone of interests" requirement of

20  prudential standing doctrine, *id*. at 32, and (while not reaching the issue), observed that it was

21  unclear whether plaintiffs would have standing to pursue their additional challenge to the

22  Agency's failure to publish the findings under ESA § 10(d) associated with the grant of a permit

23  or exemption under section 10(c).  2006 U.S. Dist. LEXIS 78573, at *34.  The Court expressed

24  doubt that, in the absence of a statutory authorization to sue under section 10(d), the publication

25  requirements of that provision gave rise to any interest other than "a general interest in agency

26  compliance with statutory requirements."  *Id*.  In that connection, the Court cited *Akins*, 524 U.S.

27  _____

28  [4]/    No Westlaw citation appears to be available for this case.

1   at 19–20, 25, holding that Congress may provide for standing through a statutory citizen's suit

2   provision.  Tellingly, in this case, Congress has not chosen to provide that statutory avenue of

3   relief.[5]/

4          In this case, plaintiffs base their claim on a statute that provides no more than that the

5   Department of the Interior shall undertake to have a report prepared for Congress's own use.

6   Significantly, when the Report is completed, it is to be provided to Interior and to the Environ-

7   mental Protection Agency ("EPA"), and those agencies are then to provide Congress with their

8   analysis of the Report at the time the Report is forwarded to the legislature.  2005 Act § 1811(d),

9   (e).  And although Interior and EPA are to consult with the States, *id*. § 1811(e), the Act does not

10  require the Agencies to solicit or consider public comment.  Nor does the Act contain a citizen's

11  suit provision or any other enforcement mechanism.  In short, the text of the Act makes it clear

12  that its purpose is to provide Congress with information that Congress may or may not use in

13  future deliberations; it is not to provide members of the public any right to information,

14  participation, or to have any specific actions undertaken in the future.  And while the Act recites

15  that the Report may be made "available to the public," 2005 Act § 1811(d), that is insufficient to

16  create a right that plaintiffs would have standing to vindicate.  Numerous government documents

17  are "available to the public"; *without more*, members of the public do not have standing to sue

18  regarding the subject matters of such documents.  *See Fund for Animals v. Norton*, 295 F. Supp.

19  2d 1, 8–9 (D.D.C. 2003) (where statute does not entitle plaintiffs to notice and comment,

20

21  [5]/     In *Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035 (9th Cir. 2006), the Ninth
    Circuit held that, where a California statute expressly provided for a judicial remedy to the class
22  of persons to which the plaintiffs belonged, the plaintiffs have standing to seek relief for the
    alleged denial of information that the statute required the defendants to provide.  *Id*. at 1038
23  (citing *Citizens for Better Forestry*, 341 F.3d at 969).  In that case, plaintiff pharmacies sued
    under a California law requiring that prescription drug intermediaries conduct or provide for a
24  study that could be used to assess reimbursement rates, and providing that an aggrieved
    pharmacy has standing to sue for violations of that law.  In deciding *Beeman*, the court noted the
25  requirement that, for Article III standing purposes, the plaintiffs must identify some "threatened
    concrete interest" that the law's procedures were designed to protect, but found that the phar-
26  macies' economic interest in the rate-setting question was sufficient.  *Id*. at 1039–40.  The case
    does not stand for the proposition that an informational injury, without more, is sufficient to
27  confer standing, but rather that the legislature *may* under certain circumstances confer rights on
    citizens that they may then enforce in court.
28

*Sierra Club, et al. v. U.S. Dep't of the Interior, et al.*, No. C-08-0850 VRW
Defendants' Notice of Motion and Motion for Judgment on the Pleadings                              9

1    plaintiffs cannot assert "informational" injury alone).

2         "Vindicating the *public* interest (including the public interest in Government observance

3    of the Constitution and laws) is the function of Congress and the Chief Executive."  *Defenders of*

4    *Wildlife*, 504 U.S. at 576 (emphasis in original).  For that reason, it is within the province of

5    Congress to ensure that Interior provides it the information called for by the 2005 Act.  Members

6    of the public, even those living in the six Western states where CBM extraction may take place,

7    have no special rights to champion Congress's interest.

8         C.    Plaintiffs Fail to Satisfy the Causation and Redressability Requirements of
                Standing
9

10        As noted above, plaintiffs point out that they live, work, and recreate in areas in which

11   CBM extraction may take place, areas consisting of six Western states:  Montana, Wyoming,

12   Colorado, New Mexico, North Dakota, and Utah.  (Complaint ¶ 14.)  *See* 2005 Act § 1811(a)(1).

13   However, plaintiffs do not assert any particular non-informational or environmental injury on the

14   basis of which the Court could find standing.  Plaintiffs do not attempt to suggest that, if the

15   Report were prepared and forwarded to Congress, Congress would enact legislation or otherwise

16   undertake any action that would alter the lives of plaintiffs' membership in any way for the

17   better.  To assert such a claim, of course, would be to engage in sheer speculation.  While

18   Congress presumably had a purpose in requesting preparation of the Report, the substance of that

19   report and its recommendations, if any, are entirely unknown at this point.  Moreover, Congress

20   is free to act on the Report, to reject it, or to do nothing at all.  Indeed, Congress could, on the

21   basis of the Report's recommendations, enact legislation that plaintiffs may oppose.  In short,

22   whatever inchoate environmental injury could possibly be read into the complaint,[6]/ no such

23   injury would seem causally related to the action challenged by plaintiffs' complaint and, so,

24   would not be redressed by a ruling in plaintiffs' favor.

25

26

27   [6]/    Of course, it is not the Court's function to supply injuries where plaintiffs have not pled
         them.  *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 108–09 (1998).
28

*Sierra Club, et al. v. U.S. Dep't of the Interior, et al.*, No. C-08-0850 VRW
Defendants' Notice of Motion and Motion for Judgment on the Pleadings                    10

1    Where an insufficient causal link exists between the agency action challenged and the

2    injuries alleged by a plaintiff, that plaintiff lacks standing to bring its claim. *Defenders of*

3    *Wildlife*, 504 U.S. at 563.  Similarly, where the remedy sought will not redress the injury alleged,

4    standing will not be found. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 103–04 (1998).

5    Where the plaintiff challenges "the legality of government action or inaction" addressed to

6    someone other than the plaintiff himself, "causation and redressability ordinarily hinge on the

7    response of the regulated (or regulable) third party to the government action or inaction — and

8    perhaps on the response of others as well." *Defenders of Wildlife*, 504 U.S. at 561–62.  "Thus,

9    when the plaintiff is not himself the object of the government action or inaction he challenges,

10    standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id*. at

11    562 (citations omitted).

12        In a case strikingly similar to this one, a plaintiff organization challenged, among other

13    things, the alleged failure of the National Park Service to conduct wilderness assessments,

14    forward proposed wilderness designations to the President, and to map existing wilderness

15    boundaries. *The Wilderness Soc'y v. Norton*, 434 F.3d 584 (D.C. Cir. 2006).  As to these claims,

16    the D.C. Circuit found that the plaintiff lacked standing because it did not assert an injury that

17    would likely be redressed by a favorable ruling. *Id*. at 590–94.  In so holding, the court noted

18    that, as in this case, Congress would ultimately be free to reject any recommendations received,

19    and indeed the President would be free to decide to propose none. *Id*. at 591, 593.  In addition,

20    with respect to the alleged failure to map wilderness boundaries, the court found it merely

21    "speculative" that third-party activities would be curtailed by that undertaking.  434 F.3d at 592

22    (quoting *Defenders of Wildlife*, 504 U.S. at 561).  In this case, of course, neither Interior nor

23    Congress is undertaking CBM extraction; those activities are conducted by third parties who

24    may or may not be subject to regulations that plaintiffs may like to see enacted in the future.

25        *Wilderness Society* cited with approval the Ninth Circuit's decision in *Guerrero v.*

26    *Clinton*, 157 F.3d 1190, 1191 (9th Cir. 1998), holding that "'where reports [to Congress] them-

27    selves trigger no legal consequences,' any injury allegedly incurred by the absence of reporting

28

1  'is . . . not redressable.'" *Wilderness Soc'y*, 434 F.3d at 591 (quoting *Guerrero*, 157 F.3d at

2  1191).  In *Guerrero*, the plaintiffs, representatives of the governments of Guam, the Mariana

3  Islands, and the State of Hawaìi, sued for the Interior Department's failure to timely produce

4  annual reports required by an act of Congress and concerning a free trade compact with the

5  governments of Micronesia and the Marshall Islands.  The plaintiffs asserted that they had a right

6  to the information to be contained in the reports, which they believed was relevant to their

7  competitive position as against the economies of those other territories.  Although the court

8  ultimately focused on the fact that plaintiffs' claim boiled down to a challenge to the adequacy of

9  the reports in question, rather than the complete failure to produce them, the court observed that

10 "the report is simply a document submitted to Congress that Congress has no obligation to

11 consider, let alone act upon."  157 F.3d at 1194.  And if Congress decided it did not get what it

12 wanted from the Agency, Congress would be "in the best position" to follow up.  *Id*. at 1195.

13 That is precisely the situation presented in this case.

14     Again, this Court's prior decision in *Cary v. Hall* is instructive.  In ruling on plaintiffs'

15 standing in that case, this Court addressed plaintiffs' additional claim that the exemption from

16 otherwise governing protections, applicable only to captive-bred domestic populations of the

17 antelope, could encourage hunting of wild populations of the animals abroad.  As to this claim,

18 the Court accepted that the plaintiffs' declarant, a researcher who asserted that he worked with

19 wild populations of the antelope overseas, had asserted a sufficient "injury," albeit at "the

20 outmost limit of plausibility." 2006 U.S. Dist. LEXIS 78573, at *12 (quoting Justice Scalia in

21 *Defenders of Wildlife*, 504 U.S. at 566–67).  However, the Court went on to hold that the

22 plaintiffs had not demonstrated a causal nexus between that alleged injury and the challenged

23 exemption, holding that any link between the hunting of captive-bred animals (allowed under the

24 exemption) and the poaching of animals in the wild (about which plaintiffs expressed concern)

25 was "anemic," *id*. at *16, "too speculative and relie[d] on the unfettered decisions of third

26 parties."  *Id*. at *20.  In this case, even assuming that plaintiffs' complaint could be read to raise

27 the specter of injury from particular CBM extraction operations in particular areas, the nexus

28

1  between any such injuries and a report to Congress that may contain recommendations of

2  completely unknown import (and on which Congress need not act) is more than simply "anemic"

3  — it is ectoplasmic.

4          Moreover, this Court found in *Cary* that any such injury was unlikely to be redressed by

5  a ruling in plaintiffs' favor. *Id.* at *20–23 (citing *Fund for Animals v. Norton*, 295 F. Supp.2d 1

6  (D.D.C. 2003)).  That is so, the Court quite properly reasoned, because a favorable ruling by the

7  Court would at most make illegal the domestic hunting of captive-bred animals, which would

8  have little bearing on hunting wild animals overseas.  *Id.*  In this case, too, even if the Court were

9  to order immediate preparation of the Report, the Report may or may not contain recommenda-

10  tions on which plaintiffs agree, Congress may or may not adopt any of those recommendations,

11  and the recommendations may or may not yield the effects desired by the plaintiffs.  For that

12  reason, plaintiffs' claim utterly fails the causation and redressability requirements of standing

13  doctrine.[7]/

14                                  CONCLUSION

15          For the reasons set forth above, Defendants respectfully request that the Court grant their

16  motion for judgment and enter judgment in their favor, dismissing plaintiffs' complaint with

17  prejudice.  A proposed order granting that relief is submitted herewith.

18

19

20  Dated: May 30, 2008                    Respectfully submitted,

21                                          RONALD J. TENPAS
                                            Assistant Attorney General
22                                          Environment and Natural Resources Division
                                            United States Department of Justice
23

24

25

26

27  [7]/        Because, as argued above, the 2005 Act confers no rights at all on the public, it is not
    necessary to analyze whether plaintiffs' claim falls within any "zone of interests," because there
    are no cognizable interests as to which the plaintiffs could claim injury.
28

1

2                                          /s/David B. Glazer
                                           DAVID B. GLAZER
3                                          Natural Resources Section
                                           Environment and Natural Resources Division
4                                          United States Department of Justice
                                           301 Howard Street, Suite 1050
5                                          San Francisco, California  94105
                                           Telephone:     (415) 744-6491
6                                          Facsimile:      (415) 744-6476
                                           E-mail:  david.glazer@usdoj.gov
7
                                           Attorneys for the Federal Defendants
8

9

10

11   OF COUNSEL

12   Richard McNeer
     Attorney Advisor
13   Office of the Solicitor
     U.S. Department of the Interior
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RONALD J. TENPAS
  Assistant Attorney General
  Environment and Natural Resources Division
  United States Department of Justice
DAVID B. GLAZER (D.C. 400966; MD)
  Natural Resources Section
  Environment and Natural Resources Division
  United States Department of Justice
  301 Howard Street, Suite 1050
  San Francisco, California  94105
  Telephone:  (415) 744-6491
  Facsimile:  (415) 744-6476
  E-mail:  david.glazer@usdoj.gov

Attorneys for the Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, WILDEARTH GUARDIANS, and ROCKY MOUNTAIN CLEAN AIR ACTION,<br><br>       Plaintiffs,<br><br>       v.<br><br>U.S. DEPARTMENT OF THE INTERIOR and DIRK KEMPTHORNE,<br><br>       Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. C-08-0850 VRW<br><br>[PROPOSED] ORDER GRANTING THE FEDERAL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br><br>Date:   August 28, 2008<br>Time:  2:30 p.m.<br>Courtroom No. 6<br><br><u>Hon. Vaughn R Walker</u> |

1    Upon consideration of the Federal Defendants' Motion for Judgment on the Pleadings, it

2 is hereby ORDERED that the motion is GRANTED, that judgment is ENTERED in Defendants'

3 favor, and that this action is DISMISSED with prejudice.

4

5

6    IT IS SO ORDERED.

7

8

9

10

11 Dated: _____

12                                          _____
                                           VAUGHN R WALKER
                                           CHIEF JUDGE
13                                         UNITED STATES DISTRICT COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28