1  Robert Ukeiley
   Admitted *Pro Hac Vice*
2  James J. Tutchton (CA Bar No. 150908)
   WildEarth Guardians
3  1536 Wynkoop Street, Suite 300
   Denver, CO 80202
4  Tel: (303) 573-4898
   Fax: (866) 618-1017
5  E-Mail: rukeiley@igc.org

6  Attorneys for Plaintiffs WildEarth Guardians and
   Rocky Mountain Clean Air Action
7
   Joanne Spalding (CA Bar No. 169560)
8  Sierra Club
   85 Second Street, Second Floor
9  San Francisco, CA 94105
   Telephone: (415) 977-5725
10 Facsimile: (415) 977-5793
   Email: joanne.spalding@sierraclub.org
11

12 Attorney for Plaintiff Sierra Club

13              UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
14                SAN FRANCISCO DIVISION
15

16 _____
                                        )
   SIERRA CLUB,                         )  Case No. C 08-850-VRW
17 WILDEARTH GUARDIANS, and             )
   ROCKY MOUNTAIN CLEAN AIR ACTION,     )
18                                       )  **PLAINTIFFS' OPPOSITION TO**
   Plaintiffs,                          )  **DEFENDANTS' MOTION FOR**
19     v.                               )  **JUDGMENT ON THE PLEADINGS**
                                        )  **AND MEMORANDUM IN SUPPORT**
20 U.S. DEPARTMENT OF THE INTERIOR, and )  **THEREOF**
   DIRK KEMPTHORNE, in his official capacity )
21 as Secretary of the Interior,        )   Date: August 28, 2008
                                        )   Time: 2:30 p.m.
22     Defendants.                      )   Courtroom No. 6
   _____ )

23

1

## Table of Authorities

**Cases**

2   *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150 (1970) ............................ 8
*Cary v. Hall*, No. 06-cv-4363, 2006 U.S. Dist LEXIS 78573 ...........................................
3       (N.D. Cal. Sept. 30, 2006) ............................................................................ 3, 5, 6, 7
*Center for Biological Diversity v. Abraham*, 218 F. Supp. 2d 1143 (N.D. Cal. 2002) .............. 5, 9
4   *Center for Biological Diversity v. Brennan*, No. C 06-7062 SBA, 2007 WL 2408901 (N.D. Cal.
        Aug. 21, 2007) ............................................................................................................. 5
5   *City of Davis v. Coleman*, 521 F.2d 661 (9th Cir 1975) ...................................................... 7
*Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388 (1987) ............................................................... 1
6   *Ecological Rights Foundation v. Pacific Lumber Co.,* 230 F.3d 1141 (9th Cir. 2000) .................. 7
*Federal Election Commission v Akins,* 524 U.S. 11 (1998) ........................................... 3, 6, 9
7   *Foundation on Economic Trends v. Lyng,* 943 F.2d 79 (D.C. Cir. 1991) .................................. 5,6
*Fund for Animals v. Norton,* 295 F. Supp. 2d 1 (D.D.C. 2003) ....................................... 3
8   *Havens Realty Corp v Coleman,* 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) .... 3
*Kootenai Tribe of Idaho v Veneman,* 313 F.3d 1094 (9th Cir 2002) ...................................... 7
9   *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S. 479 (1998) ............... 4, 8, 9
*NYPIRG v. Whitman,* 325 F.3d 316 (2nd Cir. 2003) ...................................................... 7
10  *Ocean Advocates v United States Army Corps of Engineers,* 402 F.3d 846 (9th Cir 2005) ........... 7
*Public Citizen v. Department of Justice,* 491 U.S. 440 (1989) ....................................... 3

11  **Statutes**
    2 U.S.C. § 434(a)(11)(B) ............................................................................................ 4
12  Energy Policy Act of 1992 ............................................................................................ 9
    Energy Policy Act of 2005, § 1811(a) – (d) ................................................ 1, 4, 6, 8, 9
13

14

15

16

17

18

19

20

21

22

23

i

## I.    ISSUE TO BE DECIDED

The issue for the Court to decide is whether Plaintiffs' complaint ("Comp.") alleges facts that establish that Plaintiffs have standing based on informational injury.  This suit is based on Defendants' failure to enter into an arrangement with the National Academy of Sciences to conduct and make public a study on the effect of coal bed methane production on surface and ground water resources as mandated by the Energy Policy Act of 2005.

## II.    STATEMENT OF FACTS

The Energy Policy Act of 2005, § 1811(a) – (d), requires Defendants to enter into an agreement with the National Academy of Sciences to study the impacts of coal bed methane production on the surface and ground waters of certain western states ("Report"). Pub. L. No. 109-58 § 1811, 119 Stat. 594, 1126-27 (2005).  Section 1811(d) explicitly mandates that upon completion, the Report shall be made available to the public. *See id.*; Comp. ¶ 23.  Section 1811(e) also requires a report to Congress, but Defendants failure to submit the Report to Congress is not the basis of Plaintiffs' complaint. *See* Pub. L. No. 109-58 § 1811, 119 Stat. 594, 1126-27; *see also* Comp. ¶¶ 27-33.

Defendants have not entered into an arrangement with the National Academy of Sciences to prepare the Report and thus have obviously not made the Report available to the public. Comp. ¶¶ 25,32.

Plaintiff Sierra Club has worked to prevent environmental damage, particularly to water resources, from coal bed methane development for years.  The Sierra Club will continue to fight to protect the environment from the destructive practices of extracting coal bed methane.  Comp. ¶ 9.   Plaintiff WildEarth Guardians participates and will continue to participate in numerous governmental actions involving the production of coal bed methane, including commenting on

1

and filing legal challenges to: Bureau of Land Management ("BLM") Resource Management Plans and Amendments that authorize coal bed methane production on public lands; BLM quarterly lease sale auctions for coal bed methane; BLM Applications for Permits to Drill for coal bed methane; state and county authorizations for production of coal bed methane; and National Environmental Policy Act and Endangered Species Act documents and processes, or lack thereof, regarding the various plans, permits and authorizations.  Comp. ¶ 10.  Plaintiff WildEarth Guardians works and will continue to work to protect wild rivers, wildlife, wild places and ground water from the destructive impacts of coal bed methane production.  Comp. ¶ 11. Rocky Mountain Clean Air Action and its members are concerned that air pollution from coal bed methane is posing threats to human health and welfare, and that a lack of environmental safeguards—including safeguards for surface water and ground water quality—is fueling more air pollution.  Comp. ¶ 13

If Plaintiffs and their members had the Report, they would use it to further educate the public about the impacts of coal bed methane exploration and extraction.  Their efforts would include educating their members about the harm they are exposed to as a result of coal bed methane production so that the members can take steps to protect themselves.  This approach is consistent with Sierra Club's long held practice of starting their public education efforts with their members who are most affected by a harmful action.  Plaintiffs would also use the information to inform and advance their advocacy for adoption of measures to further reduce or mitigate the impacts of coal bed methane exploration and extraction during the various opportunities BLM provides for public input discussed above.  Comp. ¶ 16.

2

III.    **ARGUMENTS**

A.    **PLAINTIFFS HAVE STANDING BASED ON THEIR INFORMATIONAL INJURY, WHICH IS CAUSED BY THE DEFENDANTS AND CAN BE REMEDIED BY THE COURT.**

Defendants argue:

> Read in the light most favorable to the plaintiffs, the complaint asserts only that the plaintiffs and their membership have been deprived of information that they might use for educational or advocacy purposes. They nowhere claim that they have suffered any concrete or particularized injuries that might be redressed by actions taken as a result of the Report — or even that the Report would necessarily result in any specific recommendations concerning actions that they might desire to see performed.

Defendants' Motion for Judgment on the Pleadings ("Motion") at 4.  Directly contrary to

Defendants' claim, this Court has held that:

> 'It is well settled that plaintiffs may suffer injury as a result of a denial of information to which they are statutorily entitled.' [*Fund for Animals v. Norton*, 295 F. Supp. 2d 1,8 (D.D.C. 2003)]. The Supreme Court has found that purely informational injury may be sufficient to confer standing where there is a statute that "seek[s]" to protect individuals from "failing to receive particular information about campaign-related activities," *Federal Election Commission v Akins*, 524 U.S. 11, 22, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998)*, where a plaintiff "has specifically requested, and been refused," information subject to mandatory public disclosure, *Public Citizen v. Department of Justice,* 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989), and where a specific statutory provision "establish[es] an enforceable right to truthful information," *Havens Realty Corp v Coleman,* 455 US 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982). These cases make clear that informational injury is implicated when plaintiffs are effectively denied information to which they would otherwise be entitled by statute.

*Cary v. Hall*, No. 06-cv-4363, 2006 U.S. Dist LEXIS 78573 at *25-26 (N.D. Cal. Sept. 30, 2006).

Plaintiffs' informational injury is well established by *Akins*, where the Supreme Court held that voters had standing to challenge the Federal Election Commission's ("FEC") decision that a particular lobbying organization was not a "political committee" within the meaning of the Federal Election Campaign Act ("FEC Act"), and hence, was not required to submit certain

3

information to the FEC that the agency would then be required to make available to the public

pursuant to that statute. 2 U.S.C. § 434(a)(11)(B); *see Akins*, 524 U.S. at 11. In ruling that the

voters had the requisite Article III standing, the Court explained that their "injury in fact" was

their "inability to obtain information" that is required by statute to be made public. *Akins*, 524

U.S. at 20. The FEC Act, similar to § 1811(d), provides that the agency "shall" make all of the

information that political committees are required to submit to the federal government

"available" to the public. *See* 2 U.S.C. § 434(a)(11)(B); *see also* Pub. L. No. 109-58 § 1811, 119

Stat. 594, 1126-27.

In this case, Plaintiffs are harmed by not having the information in the Report.  Since the

Energy Policy Act of 2005, § 1811(d), explicitly requires that the Report shall be made available

to the public, the denial of that information is sufficient informational injury to establish

standing.  Defendants' failure to enter into the arrangement with the National Academy of

Sciences is the cause of this injury and an injunction requiring Defendants to enter into such an

arrangement to have the Report prepared and released to the public will remedy Plaintiffs

injuries. Thus, Plaintiffs have standing.

Furthermore, WildEarth Guardians and Sierra Club do not want the information in the

Report simply for the sake of information.  Rather, the two conservation groups have long been

involved in the coal bed methane extraction issue and will use the information in the Report to

continue to do this work more effectively.  *See* Comp. ¶ 16.  Denial of information needed to do

WildEarth Guardians and Sierra Club's work is more than a mere interest in the subject matter of

coal bed methane extraction.  This situation is very similar to the *Cary* case in which the Court

held:

> And because Defenders has alleged that it regularly comments on *§ 10* permits,
> Defenders' injury is actual or imminent. Causation and redressability are clear.
> Defenders has standing to pursue its claim under *§ 10(c)*. The court need not

4

1

consider the standing of other plaintiffs to claim a violation of *§ 10(c)*.

2

*Cary*, 2006 U.S. Dist LEXIS 78573 at \*33.

3

*Center for Biological Diversity v. Abraham*, 218 F. Supp. 2d 1143 (N.D. Cal. 2002)

4

("*CBD*") is also a very similar case to this case.  In *CBD*, conservation groups, including Plaintiff

5

in this case Sierra Club, were suing federal agencies including the Department of the Interior, one

6

of the Defendants in this case. *CBD*, 218 F. Supp. 2d at 1148.  The suit was based on Department

7

of the Interior's and others' violations of the Energy Policy Act of 1992. *Id.*  One of Plaintiffs'

8

claims was failure "to compile and to properly make publicly available the compliance reports

9

required by the Act." *Id.*  Just as in the case at bar, the compliance reports at issue in *CBD* were

10

to be submitted to Congress, but the Energy Policy Act of 1992 also required that the compliance

11

reports be made available to the public. *See id*. at 1149–50.  Plaintiffs' cause of action was the

12

Administrative Procedure Act ("APA"), for the Energy Policy Act of 1992, as the Energy Policy

13

Act of 2005, did not contain its own cause of action.  *Id.* at 1153.  Plaintiffs stated that the

14

compliance reports, which plaintiffs did not have, would be useful for their work and would be

15

useful for environmental education. Id. The court held that that information injury was sufficient

16

to establish standing.  *Id.* at 1161; *see also Center for Biological Diversity v. Brennan*, No. C 06-

7062 SBA, 2007 WL 2408901 at \*8 (N.D. Cal. Aug. 21, 2007) (plaintiffs have standing to sue

for report under the Global Change Research Act of 1990 based on informational injury with the

APA as the cause of action).

17

Despite the above cited decisions of the Supreme Court and this Court, Defendants argue

18

that "the D.C. Circuit similarly rejected the notion of 'informational' standing." Motion at 6-7;

19

*see also Foundation on Economic Trends v. Lyng*, 943 F.2d 79 (D.C. Cir. 1991).  This is not so.

20

In that case, the D.C. Circuit issued no decision on "informational" standing.  Rather, the D.C.

21

Circuit decided:

22

23

> The issues thus presented by the Foundation's claim of standing are, however,
> unnecessary to decide in view of the Supreme Court's decision in *National
> Wildlife Federation.* Like the Supreme Court, we shall assume that the Foundation
> has adequately alleged "injury ... through the deprivation of information"

5

1

2    *Lyng*, 943 F.2d at 85.  The D.C. Circuit went on to find that plaintiffs had failed to allege a

3    specific agency action that triggered a NEPA obligation, an issue unrelated to any issue in the

4    present case.  *Id.* at 86.

5            Defendants go on to argue that the standard for establishing informational injury is really

6    informational injury "plus," although Defendants do not explain exactly what the "plus" is and

7    cite no cases that actually articulate the "plus" requirement.  Motion at 7-8.  Nor do Defendants

8    explain how they can reconcile their belief that the standard is informational injury "plus" with

9    this Court's finding that the "Supreme Court has found that <u>purely</u> informational injury may be

10   sufficient to confer standing where there is a statute that "seek[s]" to protect individuals from

11   "failing to receive particular information about campaign-related activities."  *Cary*, 2006 U.S.

12   Dist LEXIS 78573 at *25-26 (quoting *Akins*, 524 U.S. at 22) (emphasis added).  It is undisputed

13   that the Energy Policy Act of 2005, § 1811(d), explicitly requires that the Report be made

14   available to the public, *i.e.* it seeks to protect individuals from failing to receive the Report.[1]  The

15   fact that the Report is about coal bed methane and *Akins* dealt with information about campaign-

16   related activities is surely not a distinction that could dictate different results in a standing

17   analysis.

18

19

20   [1] Defendants do incorrectly claim that: "In this case, plaintiffs base their claim on a statute that
     provides no more than that the Department of the Interior shall undertake to have a report
21   prepared for Congress's own use."  Motion at 9.  However, Defendants shortly thereafter partly
     correct their incorrect statement by admitting that: "the Act recites that the Report <u>may</u> be made
22   'available to the public,' 2005 Act § 1811(d)[.]"  Motion at 9 (emphasis added).  Defendants do
     include the actual language of the 2005 Act, § 1811(d), which states that the Report "shall" be
23   made available to the public.  Motion at 3.

6

**B.     PLAINTIFFS NEED NOT PROVE THAT THE INFORMATION WOULD CHANGE THE OUTCOME OF SOME PROCEEDING**

Defendants seem to argue that in order to establish informational injury for standing, Plaintiffs must show that after they receive the information, the information will change the results of some proceeding or at least contain information recommending desirable changes. Motion at 4.  This Court has previously rejected the notion of this additional requirement in *Cary*.  In that case, the Court held:

> To require that plaintiffs prove particular environmental effects for standing purposes is overmuch and 'would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.'" *Kootenai Tribe of Idaho v Veneman,* 313 F.3d 1094, 1112 (9th Cir 2002) (quoting *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir 1975)).

*Cary*, 2006 U.S. Dist LEXIS 78573 at *14-15.[2]  The Court went on to imply that redressability did not mean that the outcome of some proceeding would be different, but that obviously plaintiffs would obtain the illegally withheld information.  *Id*, at *33.  So too in this case.

The Court also noted in *Cary* that injury can be an increased risk of harm, such as the increased risk that comes from lacking proper information.  *See id.* at *14 (citing *Ecological Rights Foundation v. Pacific Lumber Co.,* 230 F.3d 1141, 1151 (9th Cir. 2000) and *Ocean Advocates v United States Army Corps of Engineers,* 402 F.3d 846, 860 (9th Cir 2005)).  The Second Circuit has held that the injury can be the uncertainty about not knowing if one is being harmed.  *NYPIRG v. Whitman*, 325 F.3d 316, 325 (2nd Cir. 2003).  In our case, Defendants failure to provide Plaintiffs and their members with the Report increases their risk of harm and their uncertainty about being harmed, an injury that would be redressed by providing the Report.

---

[2] In any event, at this point, it must be taken as true that chemicals used in coal bed methane extraction cause adverse health impacts and that there are a number of environmental concerns

7

In any event, although the law does not require Plaintiffs to prove what the information they have been denied will contain, suppose for a moment that the Report reveals that injecting toxic chemicals into people's underground drinking water supply, which can be a part of the coal bed methane extraction process, is somehow actually good for water quality.  That information would still be useful to Plaintiffs in their education and advocacy work.  It would indicate that contamination of underground water supplies is an area that Plaintiffs need not focus on, thus leaving Plaintiffs more time and resources to focus on other more important issues, *e.g.* greenhouse gas emissions.  In other words, Defendants' illegal withholding of information may be causing Plaintiffs to misdirect their efforts, and the release of the Report would remedy this situation.  *See, e.g.*, *Havens Realty Corp.*, 455 U.S. at 379 (drain on organization's resources is injury enough to establish standing).

### C.    PLAINTIFFS ARE WITHIN THE ZONE OF INTEREST OF EPACT 2005

Contrary to Defendants' claims, Plaintiffs also satisfy the prudential standing test by falling within the zone of interest of Energy Policy Act of 2005, § 1811. *See* Pub. L. No. 109-58 § 1811, 119 Stat. 594, 1126-27. "The standard here is whether the 'interest sought to be protected by the complainant is arguably within the zone of interests to be protected . . . by the statute.' *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998), (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)." *CBD*, 218 F. Supp. 2d at 1157-58.  The zone of interests test is "not meant to be especially demanding." *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 399 (1987).  The zone of interests test is satisfied unless the plaintiffs' "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably assumed that Congress intended to permit the suit." *Clarke,* 479 U.S. at 399.  Moreover, the inquiry is not whether "Congress specifically intended to benefit the plaintiff," but rather whether the plaintiff's interest affected by the agency action falls among the interests

associated with coal bed methane extraction.  <u>See</u>, <u>e.g.</u>, Comp. ¶¶ 20-21.

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings 08-850-VRW

arguably protected by the statutory provisions at issue. *National Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. at 492.

In *CBD*, the court found the plaintiffs interest was in clean air, which is arguably within the zone of interest covered by the Alternative Fuel Vehicles provision of the Energy Policy Act of 1992. *CBD*, 218 F. Supp. 2d at 1161-62. In our case, Plaintiffs have an interest in clean water, as well as sufficient water quantity, which is arguably within the zone of interest covered by the provision of the Energy Policy Act of 2005 requiring a report of coal bed methane impacts to water.[3]

As the Supreme Court has put it, "[w]e have found nothing in the Act that suggests Congress intended to exclude voters from the benefits of these provisions, or otherwise to restrict standing, say, to political parties, candidates, or their committees." *Akins*, 524 U.S. at 20. As to the Energy Policy Act of 2005, Congress explicitly stated that the Report must be made available to the public. *See* Pub. L. No. 109-58 § 1811, 119 Stat. 594, 1126-27. Thus, there is no evidence that Congress intended to exclude the public from the benefit of the Report. Therefore, Plaintiffs easily clear the low bar set by the zone of interest test.

## IV.    CONCLUSION

Therefore, for the reasons explained above, the Court should deny Defendants' Motion.

//

//

//

---

[3] The court in CBD also noted that a requirement to make a report publicly available is different from a requirement to provide a report to Congress. <u>CBD</u>, 218 F. Supp. 2d at 1162.

9

1

Respectfully Submitted,

2

/s/ Joanne Spalding _____

3

Joanne Spalding (CA Bar. No. 169560)
Sierra Club
85 Second Street, Second Floor

4

San Francisco, CA 94105
Telephone: (415) 977-5725

5

Facsimile: (415) 977-5793
Email: joanne.spalding@sierraclub.org

6

7

Attorney for Sierra Club

8

9

10

/s/ Robert Ukeiley _____

Robert Ukeiley
Admitted *Pro Hac Vice*

11

James J. Tutchton (CA Bar No. 150908)
WildEarth Guardians

12

1536 Wynkoop Street, Suite 300
Denver, CO 80202

13

Tel: (720) 563-9306
Fax: (866) 618-1017

14

E-Mail: rukeiley@wildearthguardians.org
Email: jtutchton@law.du.edu

15

16

Attorneys for WildEarth Guardians, and
Rocky Mountain Clean Air Action

17

Dated: August 6, 2008

18

19

20

21

22

23

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings 08-850-VRW

**CERTIFICATE OF SERVICE**

1

2      I hereby certify that on the 6th day of August, a true and accurate copy of Plaintiffs'

3  Opposition to Defendant's Motion for Judgment on the Pleadings and Memorandum in Support

4  Thereof was filed with the Clerk of Court using the CM/ECF system.

5

6  Respectfully submitted, this 6th day of August, 2008.

7

8                                        s/ Hadley A. Davis_____
                                         Hadley A. Davis
                                         Program Assistant
9                                        Sierra Club Environmental Law Program
                                         85 Second St., 2nd Floor
10                                       San Francisco, CA 94105
                                         (415) 977-5768
11                                       (415) 977-5793 fax

12

13

14

15

16

17

18

19

20

21

22

23

11

Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings 08-850-VRW