Robert Ukeiley
Admitted *Pro Hac Vice*
Staff Attorney
WildEarth Guardians
1536 Wynkoop Street, Suite 300
Denver, CO 80202
Tel: (720) 563-9306
Fax: (866) 618-1017
E-mail: rukeiley@igc.org

Attorneys for Plaintiffs WildEarth Guardians,
and Rocky Mountain Clean Air Action

David B. Glazer (D.C. 400966; MD)
Natural Resources Section
Environmental & Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6491
Fax: (415) 744-6476
E-mail: david.glazer@usdoj.gov

Attorney for the Federal Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SIERRA CLUB, WILDEARTH GUARDIANS, AND ROCKY MOUNTAIN CLEAN AIR ACTION, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. DEPARTMENT OF INTERIOR, AND DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior, <br><br> Defendants | Case No.: No. C 08-850-VRW <br><br> JOINT CASE MANAGEMENT STATEMENT |

JOINT CASE MANAGEMENT STATEMENT Case No. C 08-850-VRW - 1

1. <u>Jurisdiction and Service</u>: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

Jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2202 . No issues exist over personal jurisdiction or venue and all parties have been served. However, Defendants believe the Court may be lacking jurisdiction because Plaintiffs do not have standing and the case is or will be moot.

2. <u>Facts</u>: A brief chronology of the facts and a statement of the principal factual issues in dispute.

Coal bed methane is a form of natural gas held in coal seams by water pressure. Water permeates the coal beds and its pressure causes the methane to be absorbed onto the grain surfaces of the coal. To facilitate extraction of the methane, the water is pumped out of the coal seams, which lowers the pressure, allowing the release of methane gas from coal.

A hydraulic fracturing technique is sometimes employed to extract the largest quantity of methane possible. This technique uses a mixture of water, fluids and sand, which are forced into wells at very high pressures to hydraulically fracture the coal seams. Sand particles in the hydraulic fluid prop up the widened and newly created fractures in the coal, allowing more methane gas to escape after much of the hydraulic fluid and ground water have been pumped out the wells. At the current time, Defendants do not know whether hydraulic fracturing fluids cause adverse health effects.

The Energy Policy Act of 2005 provides:

**SEC. 1811. COAL BED METHANE STUDY.**

   (a) STUDY.—

      (1) IN GENERAL.—The Secretary of the Interior, in consultation with the Administrator of the Environmental Protection Agency, shall enter into an arrangement under which the National Academy of Sciences shall conduct a study on the effect of coal bed natural gas production on surface and ground water resources, including ground water aquifers, in the States of Montana, Wyoming, Colorado, New Mexico, North Dakota, and Utah.

      (2) MATTERS TO BE ADDRESSED.—The study shall address the effectiveness of—

         (A) the management of coal bed methane produced water;

         (B) the use of best management practices; and

         (C) various production techniques for coal bed methane natural gas in minimizing impacts on water resources.

   (b) DATA ANALYSIS.—The study shall analyze available hydrologic, geologic and water quality data, along with—

      (1) production techniques, produced water management techniques, best management practices, and other factors that can mitigate effects of coal bed methane development;

      (2) the costs associated with mitigation techniques;

      (3) effects on surface or ground water resources, including drinking water, associated with surface or subsurface disposal of waters produced during extraction of coal bed methane; and

      (4) any other significant effects on surface or ground water resources associated with production of coal bed methane.

   (c) RECOMMENDATIONS.—The study shall analyze the effectiveness of current mitigation practices of coal bed methane produced water handling in relation to

existing Federal and State laws and regulations, and make recommendations as t changes, if any, to Federal law necessary to address adverse impacts to surface or ground water resources associated with coal bed methane development.

(d) COMPLETION OF STUDY.—The National Academy of Sciences shall submit the findings and recommendations of the study to the Secretary of the Interior and the Administrator of the Environmental Protection Agency within 12 months after the date of enactment of this Act, and shall upon completion make the results of the study available to the public.

(e) REPORT TO CONGRESS.—The Secretary of the Interior and the Administrator of the Environmental Protection Agency, after consulting with States, shall report to the Congress within 6 months after receiving the results of the study on—

(1) the findings and recommendations of the study;

(2) the agreement or disagreement of the Secretary of the Interior and the

Administrator of the Environmental Protection Agency with each of its findings

and recommendations; and

(3) any recommended changes in funding to address the effects of coal bed

methane production on surface and ground water resources.

P.L. 109-58 § 1811 (Aug. 8, 2005).

It is after August 8, 2006. The National Academy of Sciences has not submitted the findings and recommendations of the study described above to the Secretary of the Interior and the Administrator of the Environmental Protection Agency and has not made the results of the study available to the public.

Defendants assert that they have entered into an agreement with the National Academy of Sciences to commence work on the coal bed methane analysis. Plaintiffs dispute that this "analysis," which has consisted of the National Academy of Sciences holding a meeting to listen to various presentations but did not produce a written document, is the "study" required by P.L. 109-58 § 1811.

3.  <u>Legal Issues</u>: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

Plaintiffs do not know what issues, if any, Defendants intent to dispute except for whether Plaintiffs have standing to pursue this case, whether this case is moot, and whether the Court has jurisdiction to grant the relief plaintiffs seek. Plaintiffs believe that P.L. 109-58 § 1811 imposing a clear mandatory duty which Defendants have clearly violated. Plaintiffs have requested that Defendants explain what basis Defendants have for defending this case other than standing, mootness and that the Court does not have jurisdiction to grant the relief plaintiffs seek. Defendants have not responded.

As noted in Item 11, below, defendants believe that the type of Court supervision of the reporting process that plaintiffs contemplate is beyond the jurisdiction of this Court and is otherwise unavailable under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. Defendants reserve the right to raise additional issues or defenses, if the Court does not grant defendants' motion for judgment on the pleadings on standing grounds [Dkt. #20].

Furthermore, Plaintiffs believe that this case is not record review. *See e.g. Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). Defendants believe that this case is reviewable on the administrative record, but that the record may include materials and information developed up to the present, as the Ninth Circuit in *Clearwater* ruled.

4.  <u>Motions</u>: All prior and pending motions, their current status, and any anticipated motions.

On May 30, 2008, defendant filed a motion for judgment on the pleadings [Dkt. #20] challenging plaintiffs' standing. That motion is scheduled to be heard on the same day as the Case Management Conference, August 28, 2008. If that does not resolve the matter, the parties anticipate filing cross-motions for summary judgment.

5. <u>Amendment of Pleadings</u>: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

The parties do not believe the pleadings will need to be amended.

6. <u>Evidence Preservation</u>: Steps taken to preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

Plaintiffs have requests that Defendants preserve all e-mails and other electronic documents from management level personnel regarding the preparation of a study pursuant to P.L. 109-58 § 1811. Defendants believe that, because this case is exempted from the initial disclosure requirements, Fed. R. Civ. P. 26(a)(1)(B)(i), the parties are exempted from the otherwise applicable requirements of Fed. R. Civ. P. 26(f), including the requirement to discuss evidence preservation, *see* Fed. R. Civ. P. 26(f)(1). Nevertheless, on April 21, 2008, Defendants undertook steps to preserve documents pertinent to this action and that may be included in the administrative record.

7. <u>Disclosures</u>: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.

Plaintiffs will make their disclosures shortly. Defendants believe this is not necessary because this is a record review case. *See* Fed. R. Civ. P. 26(a)(1)(B)(i). Defendants to date have received no disclosures from plaintiffs.

1  8.  Discovery: Discovery taken to date, if any, the scope of anticipated discovery, any
2      proposed limitations or modifications of the discovery rules, and a proposed discovery
3      plan pursuant to Fed. R. Civ. P. 26(f).

There has been no discovery to date.  Plaintiffs believe discovery will be very limited. Plaintiffs believe they will need to obtain some information, via one round of document requests and interrogatories, regarding Defendants' alleged "agreement with the National Academy of Sciences to commence work on the coal bed methane analysis."  Plaintiffs will also want to take one third party deposition of someone with the National Academy of Sciences unless the National Academy of Sciences is willing to submit an affidavit consistent with their statements in the media about the lack of an agreement to conduct a study.

Defendants believe this discovery is not appropriate, because this is a record review case. Defendants argue that deposition discovery is rarely appropriate in a case brought under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. *See, e.g., United States v. Morgan*, 313 U.S. 409, 421–22 (1941); *Morgan v. United States*, 304 U.S. 1, 18 (1938); *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 & n.6, 834–36 (9th Cir. 1986).  Nor is it appropriate for the court to conduct an evidentiary hearing or otherwise examine matters outside the administrative record.  The "review of agency action . . . is limited to the administrative record and may only be expanded beyond the record to explain agency decisions," *Northwest Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006) (emphasis added), or to otherwise "plug holes" in the record, *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

9. <u>Class Actions</u>: If a class action, a proposal for how and when the class will be certified.

N/A

10. <u>Related Cases</u>: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

The parties believe that there are no related cases or proceedings pending.

11. <u>Relief</u>: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

Plaintiffs are seeking injunctive and declaratory relief and costs of litigation, including attorneys' and expert fees. Plaintiffs are seeking a declaration that Defendants are not in compliance with P.L. 109-58 § 1811 and an injunction with a schedule that contains specific dates for the completion of interim and final steps to come into compliance with P.L. 109-58 § 1811. Defendants deny that plaintiffs are entitled to any relief and specifically deny that this Court has jurisdiction to grant the type of affirmative relief plaintiffs seek under 5 U.S.C. § 706(1). *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 66-67 (2004).

12. <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

This case is essentially a deadline suit for a specific duty of Defendants. Counsel involved in this case are very familiar with the strengths and weaknesses of their case and the

positions of the other parties. Therefore, the parties do not believe that ADR would necessarily be helpful. The parties had an ADR Phone Conference on May 13, 2008.

Plaintiffs made a conceptual settlement offer to Defendants on April 14, 2008. Plaintiffs requested one document on May 13, 2008 that Defendants mentioned in the ADR Phone Conference, which defendants have provided. Plaintiffs provided Defendants with a draft settlement agreement on May 30, 2008. Defendants have not responded to all of Plaintiffs' settlement offers or requests.

As explained during the ADR Phone Conference, defendants believe that it makes sense to revisit the issue of potential settlement only after a ruling on defendants' motion for judgment on the pleadings.

13. <u>Consent to Magistrate Judge For All Purposes</u>: Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

The parties have not consented to a Magistrate Judge for all purposes.

14. <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

N/A

15. <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

The parties believe that a trial will not be necessary for this case as the issues should be resolved through dispositive motions.

16. <u>Expedited Schedule</u>: Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.

Plaintiffs believe that this is essentially a deadline suit involving an issue with significant ramifications for public health and ecological health. Therefore, a rapid resolution is appropriate but no special procedures are needed for this resolution. Defendants dispute that this case involves any immediate public or ecological health concerns, given that the dispute in question concerns the conduct of a study, and not the implementation of any particular actions.

17. <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

The Plaintiffs suggest the following schedule for cross-motions for summary judgment:

Defendants believe that the above schedule is acceptable.

| | |
|---|---|
| 10 Business Days after Court's ruling on Motion for Judgment on the Pleadings | Defendants' File Administrative Record[1] |
| 30 days later | Plaintiffs' motion for summary judgment |
| 30 days later | Defendants' opposition and cross-motion for summary judgment |
| 14 days later | Plaintiffs' reply in support of motion for summary judgment and opposition to Defendants' cross-motion for summary judgment |
| 14 days later | Defendants' reply in support of cross-motion for summary judgment |
| 7 days later | Plaintiffs' optional sur-reply if Plaintiffs believe Defendants have raised new issues in their reply brief. |
| 1st Available Date | Hearing on cross-motions for summary judgment |

18. <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

---

[1] Assuming the Court holds that this case is to be decided based on an Administrative Record.

N/A

19. <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. **In addition**, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Plaintiffs do not know of any entity with an interest in the subject matter of this case or could be substantially affected by the outcome of the proceeding except Plaintiffs and their counsel.

20. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

None.

Respectfully Submitted,

/s/ Joanne Spalding_____

Joanne Spalding (CA Bar. No. 169560)
Sierra Club
85 Second Street, Second Floor
San Francisco, CA 94105
Telephone: (415) 977-5725
Facsimile: (415) 977-5793
Email: joanne.spalding@sierraclub.org

Attorney for Sierra Club

//

//

/s/ Robert Ukeiley
Robert Ukeiley
Admitted *Pro Hac Vice*
Staff Attorney
WildEarth Guardians
1536 Wynkoop Street, Suite 300
Denver, CO 80202
Tel: (720) 563-9306
Fax: (866) 618-1017
E-Mail: rukeiley@wildearthguardians.org


/s/James J. Tutchton
James J. Tutchton (CA Bar No. 150908)
Environmental Law Clinic
University of Denver, Sturm College of Law
2255 E. Evans Ave.
Denver, CO 80208
Telephone: (303) 871-7870
Facsimile: (303) 871-6991
Email: jtutchton@law.du.edu


Attorneys for WildEarth Guardians, and
Rocky Mountain Clean Air Action

/s/David B. Glazer
David B. Glazer
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA  94105
Telephone:  (415) 744-6491
Facsimile:    (415) 744-6476DATED:
E-mail:  david.glazer@usdoj.gov

Dated: August __, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of August, a true and accurate copy of the Joint Case Management Statement with the Clerk of Court using the CM/ECF system.

Respectfully submitted, this 13th day of August, 2008.

/s/ Hadley A. Davis
Hadley A. Davis
Program Assistant
Sierra Club Environmental Law Program
85 Second St., 2nd Floor
San Francisco, CA 94105
(415) 977-5768
(415) 977-5793 fax