1  RONALD J. TENPAS
     Assistant Attorney General
2    Environment and Natural Resources Division
     United States Department of Justice
3  DAVID B. GLAZER (D.C. 400966; MD)
     Natural Resources Section
4    Environment and Natural Resources Division
     United States Department of Justice
5    301 Howard Street, Suite 1050
     San Francisco, California  94105
6    Telephone:  (415) 744-6491
     Facsimile:  (415) 744-6476
7    E-mail:  david.glazer@usdoj.gov

8  Attorneys for the Federal Defendants

9

10

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15

16  _____
                                            )
17  SIERRA CLUB, WILDEARTH                  )   No. C-08-0850 VRW
    GUARDIANS, and ROCKY MOUNTAIN           )
18  CLEAN AIR ACTION,                       )   DEFENDANTS' REPLY
                                            )   MEMORANDUM IN SUPPORT OF
19           Plaintiffs,                    )   THEIR MOTION FOR JUDGMENT
                                            )   ON THE PLEADINGS
20      v.                                  )
                                            )
21  U.S. DEPARTMENT OF THE INTERIOR         )   Date:   August 28, 2008
    and DIRK KEMPTHORNE,                    )
22                                          )   Time:  2:30 p.m.
            Defendants                      )
23  _____)   Hon. Vaughn R Walker

24

25

26

27

28

*Sierra Club, et al. v. U.S. Dep't of the Interior, et al.*, No. C-08-0850 VRW
Defendants' Reply Memorandum in Support of Their Motion for Judgment on the Pleadings

1

## TABLE OF CONTENTS

2

3   OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5       I.      Plaintiffs Fail to Satisfy the "Irreducible Minimum" of Constitutional
                Standing Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
6
                A.      Plaintiffs Have not Pled a Cognizable "Injury" . . . . . . . . . . . . . . . . . . . . 2
7
                B.      Plaintiffs Have not Pled an Injury Caused by Defendants'
8                       Conduct and That Could be Redressed by a Favorable Decision . . . . . . . 5

9       II.     Plaintiffs' Claim does Not Fall Within any "Zone of Interests" of the
                Energy Policy Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
10

11  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

**Federal Cases**

3

Cary v. Hall, No. 05-cv-4363 VRW, 2006 U.S. Dist. LEXIS 78573
    (N.D. Cal. Sep. 30, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 6, 7

4

5

Center for Biological Diversity v. Brennan, No. 06-cv-7062 SBA,
    2007 U.S. Dist. LEXIS 65456, 2007 WL 2408901 (N.D. Cal. Aug. 21, 2007) . . . . . . . . 5

6

7

Center for Biological Diversity v. Abraham, 218 F. Supp.2d 1143 (N.D. Cal. 2003) . . . . . 5, 7, 8

8

City of Sausalito v. O'Neill, 386 F.3d 1186 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9

Ecological Rights Found. v. Pacific Lumber Co., 230 F.3d 1141 (9th Cir. 2000) . . . . . . . . . . . . 6

10

Federal Election Commission v. Akins, 524 U.S. 11 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

11

Foundation on Economic Trends v. Lyng, 943 F.2d 79 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . 2, 3

12

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167 (2000) . . . . . . . 1, 2

13

Guerrero v. Clinton, 157 F.3d 1190 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

14

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15

Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 6

16

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

17

Lujan v. National Wildlife Federation, 497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18

Norton v. S. Utah Wilderness All., 542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19

NYPIRG v. Whitman, 321 F.3d 316 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20

Ocean Advocates v. U.S. Army Corps of Eng'rs, 402 F.3d 846 (9th Cir. 2005) . . . . . . . . . . . . . 6

21

Public Citizen v. Dep't of Justice, 491 U.S. 440 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22

Sierra Club v. Morton, 405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

23

Wilderness Soc'y v. Norton, 434 F.3d 584 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

24

25

**Federal Statutes**

26

5 U.S.C. App. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

27

5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28

1   5 U.S.C. §§ 701–706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

2   42 U.S.C. § 3604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3   42 U.S.C. §§ 4321–4370f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4   42 U.S.C. § 7401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5   42 U.S.C. § 7661d(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

7          **Legislative Materials**

8   138 Cong. Rec. S17568 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9   H.R. Rep. No. 104-474(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Defendants United States Department of the Interior and Dirk Kempthorne submit this

2    reply memorandum in support of their motion for judgment on the pleadings [Dkt. #20] and in

3    response to plaintiffs' opposition memorandum [Dkt. #21].  For the reasons set forth below,

4    defendants respectfully request that the Court grant their motion.

5    OVERVIEW

6    Plaintiffs have now made clear, if it was not clear before, that they do not assert anything

7    other than "informational" injury as a basis for standing.  (Pl. Opp. at 1:19–2:20.)  Having done

8    so, however, they have not explained how they have standing to pursue their claim in light of the

9    controlling Supreme Court precedent that defendants cited in their opening memorandum, *Sierra*

10    *Club v. Morton*, 405 U.S. 727 (1972), *Lujan v. Defenders of Wildlife ("DOW")*, 504 U.S. 555

11    (1992), and *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).  That precedent,

12    together with other controlling case law from the Ninth Circuit and this Court's decision in *Cary*

13    *v. Hall*, No. 05-cv-4363 VRW, 2006 U.S. Dist. LEXIS 78573[1]/ (N.D. Cal. Sep. 30, 2006)

14    (Walker, C.J.), compels the conclusion that plaintiffs lack standing to pursue this case.

15    ARGUMENT

16    I.    Plaintiffs Fail to Satisfy the "Irreducible Minimum" of Constitutional Standing Doctrine

17    To satisfy the "irreducible constitutional minimum of standing," *Lujan v. DOW*, 504 U.S.

18    at 560,

19    a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and
20    particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the
      injury is fairly traceable to the challenged action of the defendant; and (3) it is
21    likely, as opposed to merely speculative, that the injury will be redressed by a
      favorable decision.

22    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)

23    (citing *Lujan v. DOW*, 504 U.S. at 560–61).  Plaintiffs maintain that a deprivation of as-yet-

24    developed information that they might be able to use in future education and advocacy activities

25    constitutes a sufficient injury and that such injury has been caused by defendants' conduct and

26    could be redressed by the Court.  As shown below, they are wrong on all counts.

27    _____

28    [1]/    No Westlaw citation appears to be available for this case.

*Sierra Club, et al. v. U.S. Dep't of the Interior, et al.*, No. C-08-0850 VRW
Defendants' Reply Memorandum in Support of Their Motion for Judgment on the Pleadings    1

A.     <u>Plaintiffs Have not Pled a Cognizable "Injury"</u>

Plaintiffs' theory of standing asserts that an alleged deprivation of information, without more, is an injury that may confer standing.  None of the cases plaintiffs cite supports that theory, and the theory itself flies in the face of *Sierra Club v. Morton*, which (discussing a claim by one of the very plaintiffs in this case) held that "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved[.]'"[2]/ *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).  Rather, a plaintiff claiming a purely procedural or informational injury must plead that the information or procedures it seeks could, in some way, "protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan v. DOW*, 504 U.S. at 573 n.8.  Accordingly, the Ninth Circuit has emphasized that "for Article III purposes, [the Court] may recognize a 'procedural injury' when a procedural requirement has not been met, *so long as the plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that requirement*. City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (emphasis added).

Here, plaintiffs' only interest is in a hypothetical ability to base future educational or advocacy activities upon a Report to Congress that has yet to be developed and whose contents are entirely unknowable at this point.  Plaintiffs have not pled — and could not realistically plead — that this yet-to-be-developed Report would likely benefit their environmental or "aesthetic" or "recreational" interests. *Friends of the Earth*, 528 U.S. at 183 (citing *Sierra Club v. Morton*, 405 U.S. at 735 and *Lujan v. DOW*, 504 U.S. at 562–63)).  But a mere interest in future education or advocacy does not, without more, support standing.  To hold otherwise would essentially drop the constitutional requirement of standing from most or all environmental

---

[2]/     Although the Court in the quoted passage refers to injury with reference to the Administrative Procedure Act, 5 U.S.C. §§ 701–706, the question being addressed was whether the plaintiff organization had pled that it had itself suffered an "injury-in-fact," not merely whether its claim was within the prudential "zone of interests" of the relevant statute. *See Sierra Club*, 405 U.S. at 734–35 ("the 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured.") *See* Section II, below.  Interestingly, plaintiffs' opposition memorandum nowhere discusses *Sierra Club*.

1   cases. *See Foundation on Economic Trends v. Lyng*, 943 F.2d 79, 84 (D.C. Cir. 1991) ("It would

2   potentially eliminate any standing requirement . . . , save when an organization was foolish

3   enough to allege that it wanted the information for reasons having nothing to do with the

4   environment").[3/]

5       Plaintiffs maintain that *Lyng* enunciated "no decision on 'informational' standing." (Pl.

6   Opp. at 5:20–6:3, citing *Lyng*, 943 F.2d at 85–86.) It is certainly true that the *Lyng* court

7   ultimately held that, even if an informational injury were sufficient to support standing, the

8   plaintiffs in that case failed to properly challenge a discrete agency action, rather than general

9   day-to-day operations.[4/] 943 F.2d at 85–87 (relying on *Nat'l Wildlife Fed'n v. Lujan*, 497 U.S.

10  871 (1990)). The court's discussion of informational standing is nevertheless instructive,

11  particularly since (just as in *Lyng*) plaintiffs here do not challenge any particular agency action

12  beyond "the agency's refusal to [furnish the information supposedly required]." 943 F.2d at 87.

13  In both cases, the plaintiffs' cause of action boils down to a demand for information, rather than

14  a challenge to specific agency action.

15      Plaintiffs further misread this Court's opinion in *Cary v. Hall* and the cases upon which

16  this Court relied in that decision and claim — wrongly — that the case law establishes that

17  "informational injury" by itself is sufficient to confer standing. (Pl. Opp. at 3:10–6:16.) Yet as

18  defendants explained in their opening memorandum (Deft. Memo. at 7:20–9:3), no case has held

19

20  [3/]    The *Lyng* court further explained that

21          "informational injury," in its broadest sense, exists day in and day out, whenever
22          federal agencies are not creating information a member of the public would like to
            have. If such injury alone were sufficient, a prospective plaintiff could bestow
23          standing upon itself in every case merely by requesting the agency to prepare the
            detailed statement [the statute] contemplates, which in turn would prompt the
24          agency to engage in "agency action" by failing to honor the request.

25  943 F.2d at 85. Although *Lyng* involved the failure to prepare an Environmental Impact
    Statement under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370f,
26  the same principle applies in this case.

27  [4/]    The Supreme Court has more recently reaffirmed that a claim challenging an agency's
    management of day-to-day operations is not cognizable under the Administrative Procedure Act,
28  5 U.S.C. §§ 701–706. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 66–67 (2004).

1   that, without some other statutory grant of a cause of action or specific rights to public participa-

2   tion or some other procedures, a purely informational injury can withstand challenge.  This

3   Court's decision in *Cary v. Hall* is no exception.  There, the Court held that standing may be

4   available where the statute sued under provides a right to both information and participation in

5   concomitant administrative proceedings.  2006 U.S. Dist. LEXIS 78573, at *25–34.  So, the

6   Court noted that *Federal Election Commission v. Akins*, 524 U.S. 11, 16, 18, 20 (1998), involved

7   a statute that contained a specific citizen-suit provision that could be invoked by a plaintiff

8   seeking to obtain the required information.  *Cary*, 2006 U.S. Dist. LEXIS 78573, at *25.  The

9   Court further noted that the Supreme Court has allowed standing to sue under the Federal

10  Advisory Committee Act ("FACA"), 5 U.S.C. App. § 1 *et seq*., whose purpose, like that of the

11  Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is expressly to provide the public a right

12  to obtain public records.  2006 U.S. Dist. LEXIS 78573, at *26 (citing *Public Citizen v. Dep't of*

13  *Justice*, 491 U.S. 440, 449–50 (1989)).  Similarly, *Havens Realty Corp. v. Coleman*, 455 U.S.

14  363 (1982), also cited in *Cary*, at *26, held that a plaintiff may have standing to sue under the

15  Fair Housing Act ("FHA"), 42 U.S.C. § 3604.  In that case, the Supreme Court upheld the

16  standing of a minority "tester," who alleged that he had been given false information about the

17  unavailability of certain housing, because the Act expressly made furnishing such

18  misinformation unlawful.[5]/  *Id*. at 373–75.  The Court further found that the plaintiff housing

19  assistance organization had standing because it alleged discriminatory and unlawful practices

20  that directly impeded its ability to provide the housing assistance for which it was established.

21  *Id*. at 378–79.

22      In all the cases just cited, the statute sued under either provided a specific citizen-suit

23  provision, some other statutory right of process, or was enacted specifically to make certain

24  information available to the public (FACA and FOIA) or make the provision of other

25

26

27  [5]/     Interestingly, the Court held that a white "tester," who obtained *truthful* information, did not have standing.  *Id*. at 374–75.  That holding indicates the limits of informational standing even under statutes whose very purpose is the regulation of information (or misinformation).

28

1    information unlawful (the FHA).[6]/  None of those factors is present in this case.

2    In their opposition memorandum, plaintiffs rely on *Center for Biological Diversity v.*

3    *Abraham*, 218 F. Supp.2d 1143 (N.D. Cal. 2003), for the proposition that informational injury

4    alone may support standing.  (Pl. Opp. at 5:3–14.)  Closer examination of that case reveals that

5    plaintiffs' reliance is misplaced.  In *CBD*, plaintiffs sued for numerous federal agencies' failure

6    to comply with the Alternative Fuel Vehicle ("AFV") fleet requirements of the Energy Policy

7    Act of 1992, failure to comply with associated reporting obligations under the statute, and failure

8    to comply with rule-making deadlines.  The court found that only some of plaintiffs' claims of

9    injury supported standing — those "concrete" claims of injury from health and aesthetic effects

10    of pollution where plaintiffs lived, worked, and recreated, alleged to result from the defendants'

11    non-AFV vehicle fleets.[7]/  218 F. Supp.2d at 1155, 1163–64.  Although the court found that the

12    plaintiffs also had standing to pursue their compliance reporting claims, *id*. at 1162–63, the court

13    did not hold that such claims could have been maintained absent allegations of environmental

14    harm, which plaintiffs elsewhere had pled.

15    B.    Plaintiffs Have not Pled an Injury Caused by Defendants' Conduct and That
16          Could be Redressed by a Favorable Decision

17    In addition to failing to come to terms with controlling Supreme Court precedent on

18    "injury-in-fact," plaintiffs fail to address *The Wilderness Soc'y v. Norton*, 434 F.3d 584 (D.C.

19    Cir. 2006), or this Circuit's opinion in *Guerrero v. Clinton*, 157 F.3d 1190 (9th Cir. 1998), both

20    of which compel the conclusion that plaintiffs cannot satisfy the causation and redressability

21

22

23

24    [6]/    *See also Center for Biological Diversity v. Brennan*, No. 06-cv-7062 SBA, 2007 U.S.
25    Dist. LEXIS 65456, at *9–27, 2007 WL 2408901, at *3–10 (N.D. Cal. Aug. 21, 2007) (injury-in-fact premised upon statutorily guaranteed opportunities for public comment and participation).

26    [7]/    Notably, the court found that most of plaintiffs' alleged injuries did *not* support standing,
27    including their claims that defendants' alleged violations would increase traffic, increase global warming, lead to increased oil exploration, and reduce at least one plaintiff's opportunity to
28    purchase an AFV.  218 F. Supp.2d at 1155.

1    prongs of standing doctrine.[8]/  (*See* Deft. Memo. at 11:12–12:13.)  In both cases, the courts noted

2    that where Congress is free to accept or reject recommendations from the Executive Branch, the

3    chain of causation and corresponding likelihood of redress is broken.  *See Wilderness Soc'y*,

4    434 F.3d at 590–94; *Guerrero*, 157 F.3d at 1191, 1194–95.[9]/

5            Plaintiffs miscast the issue of causation and redressability by arguing merely that they are

6    not required to "prove" that the information sought would "change the outcome of some

7    proceeding."  (Pl. Opp. at 7:1–8:10.)  But that is not the proof to which defendants assert

8    plaintiffs should be put, and plaintiffs' citations to *Cary v. Hall* (Pl. Memo. 7:6–17) do not

9    support their argument.  In *Cary*, the Court accepted certain allegations that one of the plaintiffs,

10   Dr. Clark, had an interest in specific animal individuals, 2006 U.S. Dist. LEXIS 78573, at *12.

11   At that point, the Court held merely that the plaintiff did not need to demonstrate actual negative

12   impacts on those animals to support injury, *id*. at 14–15 (citing *Kootenai Tribe of Idaho v.*

13   *Veneman*, 313 F.3d 1094, 1112 (9th Cir. 2002) (plaintiffs need not prove particular environmental

14   effects to achieve standing); *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141,

15   1151 (9th Cir. 2000) (Clean Water Act citizen plaintiff need not demonstrate actual, as opposed

16   to threatened, harm to obtain standing); *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402

17   F.3d 846, 860 (9th Cir. 2005) (increased risk of environmental harm sufficient to support

18   standing)).  Defendants do not argue otherwise, but merely insist that plaintiffs at least *allege*

19   some "aesthetic or recreational interest in a particular place, or animal, or plant species and that

20   that interest is impaired by [defendants'] conduct," *Ocean Advocates*, 402 F.3d at 860 (quoting

21

22

23

24   [8]/    As with *Sierra Club v. Morton*, plaintiffs do not even discuss these cases.

25   [9]/    As noted in defendants' opening memorandum (Deft. Memo. at 12:7–9), the court
     ultimately rejected plaintiffs' claim in *Guerrero* because it challenged the inadequacy of the
26   reports in question, which the court held was not actionable because the reports were "a tool for
     [Congress's] own use, without cognizable legal consequences."  157 F.23d at 1197.  It is not
27   clear, however, that the plaintiffs would have been any more successful on causation and
     redressability if the reports in that case were simply not completed at all.
28

1    *Ecological Rights Found.*, 230 F.3d at 1147), and that a favorable ruling could redress.[10]/

2    Having determined in *Cary* that plaintiff Clark sufficiently alleged injury, this Court went

3    on to hold that the plaintiff had failed to "fortif[y] the anemic causal connection" between the

4    claimed injury and the alleged violations by the government, 2006 U.S. Dist. LEXIS 78573, at

5    *18, and the plaintiff failed to demonstrate both causation and redressability, *id.* at *18–23.[11]/

6    The court in *CBD v. Abraham*, cited by plaintiffs (Pl. Opp. at 5:3–14), was similarly

7    troubled by the doubtful proposition that the plaintiffs' claimed injuries were caused by

8    defendants' conduct or could be redressed by a favorable ruling. 218 F. Supp.2d at 1155–56.

9    The plaintiffs' case was saved by allegations that, if government bought AFVs, the industry

10   might be catalyzed to produce them for the public, a claim that the court found was supported by

11   findings in the legislative history accompanying the Act.[12]/  *Id.* at 1156–57 (quoting H.R. Rep.

12   No. 104-474(I), at 136–37, *reprinted in* 1992 U.S.C.C.A.N. 1954, 1960; and 138 Cong. Rec.

13   S17568) (remarks of Sen. Johnston)).  Again, the court found that a favorable ruling in that case,

14   requiring increased government use of AFVs, could result in *tangibl*e environmental benefits for

15   plaintiffs.  *See* 218 F. Supp.2d at 1155, 1163–64.  Here, plaintiffs make no attempt to draw even

16   the most "anemic" causal connection between publication of the Report to Congress and any on-

17   the-ground environmental benefits; rather, as noted at the outset, plaintiffs emphasize that the

18   _____

19   [10]/    *NYPIRG v. Whitman*, 321 F.3d 316 (2nd Cir. 2003), cited by plaintiffs (Pl. Opp. at 7:17–
     19), is not too the contrary.  There, plaintiffs challenged EPA's approval, under the Clean Air
20   Act ("CAA"), 42 U.S.C. § 7401 *et seq*., of the State of New York's Title V permitting  program,
     as well as the approval of three permits for specific, regulated facilities.  The court found
21   standing because the plaintiffs, each of whom lived near a Title V facility, sufficiently alleged
     the possibility of increased exposure to pollution and because CAA § 505(b)(2), 42 U.S.C. §
22   7661d(b)(2), affords "any person" the right to object to a Title V permit.  321 F.3d at 324–26.

23   [11]/    As noted earlier, *supra* at 4, the Court upheld standing as to other of plaintiffs' claims,
     where the plaintiffs asserted a statutory right to public participation procedures, in addition to
24   publication of the information sought.  2006 U.S. Dist. LEXIS 78573, at *31–33.  But where no
     such additional procedures were implicated, and no specific right of enforcement was created,
25   the Court observed that it is "doubtful" that a claim demanding mere publication of information
     would support standing.  *Id.* at *34.

26   [12]/    Similarly, the court found that those claims fell within the statutory "zone of interests"
     because one purpose of Act, according to the legislative history, was to "promote cleaner
27   alternative automotive fuels."  218 F. Supp.2d at 1158 (quoting H.R. No. 102-474(I), at 132,
     *reprinted in* 1992 U.S.C.C.A.N. 1955).
28

1    injury they allege relates solely to educational and advocacy activities.[13]/  (*See* Pl. Opp. at

2    2:12–20; 8:1–11.)

3    II.    Plaintiffs' Claim does Not Fall Within any "Zone of Interests" of the Energy Policy Act

4         Plaintiffs contend that they fall within the "zone of interests" of the Energy Policy Act of

5    2005, citing *CBD v. Abraham*, 218 F. Supp.2d at 1161–62.  (Pl. Opp. at 9:2–7.)  That case,

6    however, points in the opposite direction.  In that case, the court found that the plaintiffs had

7    standing to pursue their compliance reporting claims under the Energy Policy Act of 1992, *id*. at

8    1161–62, but only after finding that the plaintiffs had sufficiently alleged (but just barely) the

9    kind of environmental harm to which the Act addressed itself, *id*. at 1155–57.  In this case, by

10   contrast, plaintiffs do not suggest that publication of the Report to Congress, without more, will

11   make their water the least bit cleaner, or result in any similar benefit.

12         Plaintiffs also rely on *FEC v. Akins*, 524 U.S. at 20, to support their claim that they must

13   be deemed to fall within the zone of interests of the Energy Policy Act of 2005.  (Pl. Opp. at

14   9:8–14.)  In *Akins*, the Court held that Congress did not appear to have restricted the class of

15   potential plaintiffs under the Federal Election Campaign Act to "political parties, candidates, or

16   their committees."  *Id*. at 20.  But antecedent to that holding was the recognition that the Act

17   specifically provides for citizen complaints and district court review when the Federal Election

18   Commission dismisses a complaint.  *Id*. at 19.  Nothing in the Energy Policy Act provides for

19   citizen suits of any kind, so plaintiffs' reliance upon *Akins* is again unfounded.

20

21

22

23

24

25

26   _____

27   [13]/    Although plaintiffs cite the discussion in *Cary v. Hall* concerning public participation in
     specific permitting proceedings (Pl. Opp. at 4:20–5:2, citing 2006 U.S. Dist. LEXIS 78573, at
28   *33), they point to no specific proceedings in this case in which their efforts have been hindered.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>CONCLUSION</u>

For the reasons set forth above, defendants respectfully ask that the Court grant their motion for judgment on the pleadings and dismiss plaintiffs' complaint with prejudice.


Dated: August 14, 2008                    Respectfully submitted,

                                          RONALD J. TENPAS
                                          Assistant Attorney General
                                          Environment and Natural Resources Division
                                          United States Department of Justice
                                          Washington, D.C.  20530


                                          <u>/s/David B. Glazer</u>
                                          DAVID B. GLAZER
                                          Natural Resources Section
                                          Environment and Natural Resources Division
                                          United States Department of Justice
                                          301 Howard Street, Suite 1050
                                          San Francisco, California  94105
                                          Telephone:     (415) 744-6491
                                          Facsimile:     (415) 744-6476
                                          E-mail:  david.glazer@usdoj.gov


                                          Attorneys for Defendants